In the Matter of the Complaint of FARRELL LINES, INCORPORATED, as Owner of the STEAMSHIP AFRICAN STAR, for Exoneration from or Limitation of Liability.

In the Matter of INTERCITY BARGE COMPANY, Incorporated, as Owner, and of National Marine Service, Inc., as Bareboat Charterer of the BARGES INTERCITY NO. 11 and INTERCITY NO. 14, Praying for Exoneration from or Limitation of Liability.

In the Matter of NATIONAL MARINE SERVICE, INC., as Owner of the TOWBOAT MIDWEST CITIES, Praying for Exoneration from or Limitation of Liability.

In the Matter of FARRELL LINES, INCORPORATED, as Owner of the STEAMSHIP AFRICAN STAR, for Exoneration from or Limitation of Liability.

Claim of Douglas C. NAEGELE.

Civ. A. Nos. 68–679, 68–1123, 68–789, 69–591.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 29, 1971.

Harold J. Lamy, of Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for plaintiff.

Harry S. Redmon, Jr., of Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Farrell Lines, Inc.

CHRISTENBERRY, District Judge.

Claimants' decedent was killed on March 16, 1968, while employed as a seaman aboard the S.S. African Star as a result of a collision between the S.S. African Star, the Tug Midwest Cities, and the barges Intercity No. 11 and Intercity No. 14 in the Mississippi River near the town of Port Sulphur, Louisiana. His father and mother, Mr. Cecil J. Naegele and Mrs. Mary Manning Naegele, make claims individually and as survivors of their son, and the father also sues as the personal representative of the decedent's estate.

From Farrell Lines, Inc., owner and operator of the S.S. African Star, decedent's employer, the claimants seek damages for the loss of their son under the general maritime law for unseaworthiness, the Jones Act, and Louisiana Civil Code article 2315. On the same grounds, claimants seek recovery from the insurers of Farrell Lines, Inc., American Steamship Mutual Protection & Indemnity Association, Inc.; Underwriters at Lloyd's, London, England; and the Institute of London Underwriters, London, England.

From National Marine Service, Inc., owner and operator of the Tug Midwest Cities, the claimants seek damages for

unseaworthiness and under Louisiana Civil Code article 2315. The same laws provide the basis for the claims against this defendant's liability insurers: Atlantic Mutual Insurance Co.; Underwriters at Lloyd's, London, England; and the following Britain-based insurance companies: Orion "T" A/C, London & O'Seas "A" A/C, English and American "M" A/C, Andrew Weir, Edinburg No. 2 A/C, Threadneedle, and River Thames.

From Intercity Barge Co., Inc., owner and operator of the barges Intercity No. 11 and Intercity No. 14, and its unknown liability insurer, referred to as the ABC Insurance Co., claimants seek damages under the general maritime law of unseaworthiness and Louisiana Civil Code article 2315. (These two barges constituted the tow of the Tug Midwest Cities.)

At the trial held on January 22, 1971, the parties stipulated liability so that the issues in contention concern only the measure of damages. After the trial, the defendants moved to dismiss the claims for the following elements of damages: (1) loss of support; (2) loss of advice, care and guidance; and (3) loss of the economic value of decedent's life. The defendants also moved for judgment on the claim for loss of love and affection.

In Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970), the Court held that an action for wrongful death will lie under the general maritime law; however, the question of the measure of damages, the issue involved in the present motions, was specifically left open. On this point the Supreme Court stated that "the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades." 398 U.S. at 408, 90 S.Ct. at 1792.

■ The Fifth Circuit Court of Appeals in Hornsby v. Fish Meal Co., 431 F.2d 865 (5th Cir. 1970), stated that "[t]here is now a cause of action for wrongful death in admiralty that is not dependent on adjacent state law." Based on that statement the court, in *Hornsby*, applied the traditional admiralty comparative negligence doctrine to determine liability for the deaths of two pilots killed when their planes collided over navigable water located within the state of Louisiana. For the same reason that *Hornsby* rejected the Louisiana doctrine of contributory negligence, this court has applied the admiralty measure of damages and finds inapplicable Louisiana Civil Code article 2315 which provides the state measure of damages.

■ Inasmuch as the measure of damages under the general maritime law is at least as broad, and perhaps a good deal broader, than the Jones Act, there is no need to consider the Jones Act claims separately.

The Sixth Circuit Court of Appeals in United States Steel Corp. v. Lamp, 436 F.2d 1256 (6th Cir. 1970), denied recovery for certain nonpecuniary items of damages under both the Jones Act and the general maritime law. Specifically, the court denied recovery for loss of care and guidance to widows and for loss of love, companionship, and guidance to adult or emancipated children of the deceased. The reasons given were that both the Jones Act and the Death on the High Seas Act deny recovery for these items and that the measure of damages under the general maritime law ought to be uniform. That line of reasoning, however, omits an analogy to state wrongful-death actions which was suggested by the Supreme Court in *Moragne*. Judge Rubin, of this court, in two recent opinions, allowed recovery for nonpecuniary losses under the general maritime law. Dennis v. Central Gulf S. S. Co., 323 F.Supp. 943 (E.D.La.1971); *In re* Sincere Navigation Corp., 329 F. Supp. 652 (E.D.La.1971). Judge Rubin's approach embraces the Supreme Court's dicta in *Moragne* and permits recovery for damages heretofore unrecognized in admiralty. This is a more appealing result, especially when one

considers that such damages are no less real and no less difficult to appraise than the decedent's pain and suffering prior to death which is allowed under the federal statutes.

■ Adopting both the reasoning and the conclusions of Judge Rubin's opinions, the following items of damages will be allowed:

1. Loss of support
2. Loss of love and affection
3. Funeral expenses
4. The decedent's conscious pain and suffering.

## 1. LOSS OF SUPPORT

At the time of his death, the deceased, Douglas C. Naegele, was nineteen years of age and unmarried. He was survived by his parents and five brothers. The parents, Cecil J. Naegele and Mary Manning Naegele, were ages 56 and 55 respectively at the time of their son's death. The health of both parents is not good; Mr. Naegele suffered a heart attack in 1968, and is under a doctor's care; Mrs. Naegele is under a doctor's care for nerves and cardiac spasms. Mr. Naegele works for the West Virginia Department of Highways, receiving a salary of $485.00 per month. In addition, he earns approximately $100.00 per month selling insurance on a part-time basis. In the past Mrs. Naegele has worked part-time, but her poor health has made it increasingly difficult for her to remain employed. The Naegeles have $3000 in debts incurred as a result of the heart attack suffered by Mr. Naegele which caused him to lose all income for the eight months of his convalescence. They have no savings.

Douglas Naegele, the deceased, was a midshipman in the United States Merchant Marine Academy at Kings Point, New York. He enjoyed excellent health and was a superior athlete. At the time of his demise, Douglas Naegele was on a working cruise as a part of the training to be acquired at the Merchant Marine Academy. The deceased was an excellent student and was considered to have outstanding leadership potential. His ambition was to become a ship captain.

Prior to entering the Merchant Marine Academy Douglas Naegele had worked part-time while going to high school. He had turned over to his parents all of his earnings and they had given him money when he needed it. While he had no income during his tenure as a midshipman, it appears that Douglas Naegele, having no plans to marry, would have contributed to the support of his parents in their declining years. Upon graduation he would have had the merchant marine rank of third officer and would have earned in excess of $1200 per month. Increases in income for a young man of Douglas Naegele's ability and character would have been inevitable.

However, the court feels that Mr. and Mrs. Naegele can also anticipate some financial assistance from four of their other sons. Four sons are married and have children. Three of them are plumbers, one is in medical school studying to be a doctor. A fifth son is in the seminary and in all probability would be unable to assist them financially.

■ In the court's opinion, Mr. and Mrs. Naegele have each established a total loss of support of $15,000. The parties have stipulated the life expectancies of Mr. and Mrs. Naegele to be 18.8 years and 24.5 years respectively. Discounted at 4½% of the loss amounts to $9,978.28 for Mr. Naegele and $8,976.60 for Mrs. Naegele.

## 2. LOSS OF LOVE AND AFFECTION

■ The evidence established that Douglas Naegele was close to his parents and that they will suffer from the loss of love and affection of their son. The amount of $25,000 for each parent is reasonable and will be allowed.

## 3. FUNERAL EXPENSES

Recovery for the funeral bill, stipulated by the parties to be $660.00, will be allowed.

#### 4. THE DECEDENT'S CONSCIOUS PAIN AND SUFFERING

The testimony of Dr. Herbert Ichinose, the pathologist who performed the autopsy upon the body of the deceased, established that Douglas Naegele died by drowning and that he was probably conscious to the time of death. Dr. Ichinose's testimony also established that prior to drowning the decedent had received "fairly extensive" first and second degree burns to the side of the head.

Both of the decedent's legs had been fractured, and the distal half of the right leg was missing. Because advanced post-mortem autolysis had set in, the body having been recovered and the autopsy performed some four weeks after the accident, Dr. Ichinose was unable to determine whether the leg injuries had been sustained prior to or after the death of the decedent. Conscious suffering as a result of the leg injuries not having been proven, no damages in connection thereto may be allowed. However, there can be no doubt that the decedent suffered from the burns and suffered at the time he was drowning. $10,000.00 will be allowed for this suffering of the deceased.

Although the plaintiffs pleaded loss of advice, care, and guidance as an item of damage, they offered no proof to show any actual loss. Since the damage has not been proved, recovery will be denied.

The final item of damage claimed by the plaintiffs is the loss of the economic value of decedent's life. The Jones Act does not afford relief for the loss of the economic value of decedent's life. Clinton v. Ingram Corp., 312 F.Supp. 539 (N.D.Miss.1970). Neither is it allowed under the Death on the High Seas Act. Middleton v. Luckenbach SS Co., 70 F.2d 326 (2d Cir. 1934), cert. den., 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934), or by most state wrongful-death statutes. 25A C.J.S. Death § 95 (1966); W. Prosser, Law of Torts 805 (3d ed. 1964). Because claimants will be adequately and fairly compensated for their actual losses, through pecuniary and nonpecuniary damages, recovery for this item is denied.

Allowance of prejudgment interest in general maritime cases is within the discretion of the trial court. See Canova v. Travelers Ins. Co., 406 F.2d 410 (5th Cir. 1969). It will be allowed in this case.

Judgment will be entered accordingly.