Mrs. Francis Nell **HIGGINBOTHAM**, Admx., etc., of Marshall K. Higginbotham, Deceased, etc.

v.

**MOBIL OIL CORPORATION** et al.

Mrs. Wanda Moore **LONG**, Admx. of Est. of Deceased Joseph C. Long, Jr., etc.

v.

**BELL HELICOPTER CO.**, etc. et al.

Jeanette Leblanc **NATION**, Personal Representative for Ella Menard Nation and Roy Glen Nation

v.

**TEXTRON INDUSTRIES, INC.**, etc. et al.

Mrs. Arline J. **SHINN**, Ind., etc.

v.

**MOBIL OIL CORPORATION.**

Civ. A. Nos. 13954, 13958, 15316 and 15326.

United States District Court, W. D. Louisiana, Opelousas Division.

June 25, 1973.

———◆———

Charles M. Thompson, Jr., Abbeville, La., for Mrs. Neil Higginbotham, and Mrs. Jeanette LeBlanc Nations.

Jack C. Caldwell, Aycock, Horne, Caldwell & Coleman, Franklin, La., for Mrs. Wanda Moore Long.

Jack C. Benjamin, Kierr & Gainsburgh, New Orleans, La., for Mrs. Arline J. Shinn.

Carl J. Schumacher, Jr., and Robert E. Badger, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for Mobil Oil Corp.

Carl J. Schumacher, Jr., and Robert E. Badger, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., Ronald L. Neill, Dallas, Tex., for Mobil Oil Corp.

Richard R. Christovich and C. Edgar Cloutier, Christovich & Kearney, New Orleans, La., James M. Fitzsimons, Mendes & Mount, New York City, for Bell Helicopter Co., and Bell Aerospace Corp.

## QUANTUM
### NAUMAN S. SCOTT, District Judge.
### FINDINGS OF FACT
### MARSHALL K. HIGGINBOTHAM

1. As per Letters Testamentary issued by the Fifteenth Judicial District Court for the Parish of Vermilion in the proceedings entitled "Succession of Marshall K. Higginbotham" bearing docket Number 5751, dated April 17, 1968, and the Tutorship of Donna Joyce Higginbotham, plaintiff, Mrs. Francis Nell Higginbotham, is the duly qualified testamentary executrix of the Succession of Marshall K. Higginbotham, the personal representative of his estate, and the duly qualified tutrix of Donna Joyce Higginbotham.

2. At the time of the accident, Marshall K. Higginbotham had been married to Francis Nell Higginbotham since June 24, 1950, and had lived with her until his death.

3. Marshall K. Higginbotham was born February 15, 1925, and at the time of death was 42 years of age and had a reasonable life expectancy of 29.45 years. Mrs. Higginbotham was born September 12, 1930, and according to life tables in evidence, had a reasonable life expectancy in excess of that of her husband. One child had been adopted by Mr. and Mrs. Higginbotham on September 21, 1962, but had lived with Mr. and Mrs. Higginbotham since she was six weeks old. This child, Donna Joyce Higginbotham, was nine years of age at the time of her father's death on August 15, 1967.

4. At the time of the casualty, decedent, his wife and Donna resided together in Vermilion Parish, Louisiana.

5. Mrs. Higginbotham and Donna were dependent upon decedent for their support and subsistence.

6. Although the evidence does not indicate the length of time which elapsed

while the ill-fated helicopter was crashing, we find that the resultant crash was for all practical purposes instantaneous, thus precluding any award for conscious pain, suffering and mental anguish.

7. At the time of his death, Higginbotham was a senior tool pusher employed by Baxter Drilling Company, for whom he had worked continuously since June 11, 1963. Mr. Higginbotham was employed at a salary of $1100.00 per month, plus numerous other items paid in the form of additional salary. Baxter, a corporation of much smaller size than Mobil or Bell, for example, furnished an automobile to decedent, with all expenses included for operation, use, repairs and insurance on the automobile and for his full use. Dr. Herbert Hamilton, an eminent expert in the field of economics and statistics, assessed a value of $225.00 a month for this one item. A hospitalization policy for his use and family use was furnished by the company. Because Mr. Higginbotham was employed for a company not as large as the defendants in this case, he was allowed considerable leeway in the form of entertainment for him and his family on his company expense account. Additionally, Mr. Higginbotham received other things of value from the safety award program. The evidence shows that he was awarded as many as 2400 S & H Green stamps monthly, if his rig operated without a lost time accident, plus a $50.00 United States Savings Bond at the end of six months and the equivalent of a $100.00 wrist watch at the end of an accident free year. Also, certain pleasure trips such as deer hunts were furnished by his employer as a token of the company's appreciation of his services. Also, according to the undisputed evidence, Mr. Higginbotham, had he lived, would have continued to enjoy increases in his earnings. Mr. Higginbotham and his family had commenced a business of raising running quarter horses, and at the time of his death, had

accumulated ten horses. Mr. Higginbotham was a robust man and in excellent health at the time of his death.

8. For many months prior to his death, decedent had been assigned to work on locations in the Gulf of Mexico and worked thereon seven days at a time, followed by seven days off. While he worked offshore, he was furnished food and lodging by Mobil Oil Corporation without cost to him.

9. Because Mr. Higginbotham was employed by a company much smaller than Mobil, he had no scheduled retirement date. It was made very clear during the trial that Mr. Higginbotham had stable and regular employment with Baxter Drilling Company. Because Baxter did not have a stated policy of salary increases, Dr. Hamilton used the salary of D. W. Case, the man who replaced Mr. Higginbotham after his death in trying to project a sensible rate of increase in the future. Dr. Hamilton presented three methods of calculation for pecuniary loss. Method one represents no change in salary at all from date of death. This method is not appealing. Method two was presented by using the salary of D. W. Case up to and including the date of trial with no change thereafter. This method of calculation also is not appealing because it is not likely that Mr. Higginbotham, with his most productive years ahead of him, would not have received a salary increase. Nevertheless, based on a salary of $15,000.00 a year which Mr. Case commenced receiving within a matter of a few months after Higginbotham's death, if these figures were used from date of death to June of 1973, Higginbotham's wage loss amounts to $87,500.00, not discounted, and from 1973 to 1990, the date on which Higginbotham would have reached age 65, this wage loss amounts to $202,329.00 plus the $87,500.00 or a total of $289,829.00. This would allow Higginbotham no wage increases from 1969 through 1990. Such an assumption is unreasonable.

The third method used by Dr. Hamilton embraced the salary of D. W. Case to the time of trial with approximately a five per cent (5%) annual increase thereafter. Dr. Hamilton reduced these figures to present values as of August 15, 1967, but since the money is not yet paid no reduction is to be made before judgment. The accrued loss of income from date of death to June 15, 1973, 70 months, approximates $93,940.00. This figure was arrived at by taking an expected average earning increase of $92.00 per month (D. W. Case received this) making a total monthly salary of approximately $1,342.00 with no discount up to June of 1973. This monthly salary of $1,342.00 was then projected to 1990 and discounted at five per cent (5%) making a total of $217,220.00. The $93,940.00 added to $217,220.00 makes a total of $311,160.00. This amount has been reduced by a deduction of fifteen per cent (15%) for personal use, which reduces the net loss to the family to $264,486.00.

Mr. Higginbotham was furnished a car for his personal use while on the beach, an expense account for his personal use, and room and board while on the job. Also his personal consumption was small. The full use of an automobile until retirement, calculated from death to June of 1973 amounts to $15,750.00, not discounted. From June of 1973, to age 65 the loss is, discounted at five per cent (5%), $36,419.00 which makes a total loss of $52,169.00. Insurance, medical and hospital figures came to $3,049.00, not discounted because as Dr. Hamilton explained these costs are constantly on the rise.

10. Since decedent worked offshore two weeks out of every month, during which time he was furnished food and lodging without cost, since his personal needs were simple, and since his income was supplemented by the expense account and car, decedent required approximately fifteen per cent (15%) of his income for personal needs. This percentage is a fair and reasonable apportionment of Higginbotham's total income attributable to his personal use had he survived.

11. Higginbotham provided the guidance, care and discipline of a good father to the minor child Donna, who was residing in his household. His .moral qualities, sense of values, beliefs and experiences in life, when considered with the close relationship which existed between him and his child, leads this Court to conclude that the minor child has sustained, during her minority, and will continue to sustain, further loss from the lack of her father's care, guidance and discipline. This item of damages is assessed at $2,000.00 a year for the child throughout her minority and school years. The award to Donna Higginbotham for this item is $26,000.00.

12. The evidence was uncontradicted and unchallenged that decedent performed services in and about the house, assisting with the payment of bills, maintenance, transporting the family in his company car and on vacation trips. The Court is aware that services such as these have a value which the Court estimates at approximately $50.00 per month. The accrued loss and future loss amounts to approximately $11,956.00. This figure is comprised of an accrued loss of $50.00 per month for seventy (70) months or until June, 1973, or a total of $3500.00, not discounted. Then from June, 1973, decedent had approximately 25 years of reasonable life expectancy and this figure discounted at five per cent (5%) amounts to $8,456.00, or a total of $11,956.00.

13. The above enumerated elements constitute the damages allowable to the administratrix individually and in her representative capacity in this action. If the applicable law authorized an award of general damages, the Court, in this case, would find that the decedent and his wife were happily married for many years; that close and affectionate ties between him and his child did exist; and that each member of his family has sustained a loss from being deprived of

his love, affection, companionship and society, and suffered emotional grief, as a result of his demise, in the following amounts:

| | | |
|---|---|---|
| Mrs. Marshall K. Higginbotham | $ 50,000.00 | |
| Donna Joyce Higginbotham | 50,000.00 | |
| Total General Damages | | $ 100,000.00 |

14. The pecuniary loss to Mrs. Marshall K. Higginbotham, surviving widow, and Donna Joyce Higginbotham, surviving dependent child, is as follows:

| | | |
|---|---|---|
| Loss of wages, to date | $ 93,940.00 | |
| Future loss of earnings, discounted | $217,220.00 | |
| Total Wage Loss | | $ 311,160.00 |
| Less fifteen per cent (15%) attributable to decedent's personal use | − $ 46,674.00 | |
| Net Loss to Family | | $ 264,486.00 |
| Loss of Employer's Contributions to Insurance, Medical & Hospital | | $ 3,049.00 |
| Loss of personal use of an automobile furnished as additional salary, to date | $ 15,750.00 | |
| Loss of future use of automobile for personal use, discounted | $ 36,419.00 | |
| Total loss of use of automobile for personal use | | $ 52,169.00 |
| Extra items in connection with employment including savings bonds and other valuables, to date | $ 1,400.00 | |
| Future loss of extra items in connection with employment including savings bonds and other valuables, discounted | $ 3,237.00 | |
| Total extra items | | $ 4,637.00 |
| Loss of services to the family, to date | $ 3,500.00 | |
| Loss of services in the future for life expectancy discounted | $ 8,456.00 | |
| Total loss of services | | $ 11,956.00 |
| Loss of nurture to Donna Joyce Higginbotham | | $ 26,000.00 |
| TOTAL PECUNIARY LOSS | | $ 362,297.00 |

———◆———

In addition to the lump sum award for nurture, that portion of the pecuniary loss to the minor should be distributed to her at the rate of $4,000.00 per year

during minority or a total of $36,000.00. The remainder of the award for pecuniary loss is recoverable by the widow and totals $300,397.00.

## JAMES L. SHINN

1. As per Letters Testamentary, issued by the Sixteenth Judicial District Court for the Parish of St. Mary, in the proceedings entitled "Succession of James L. Shinn," bearing docket No. 8213, dated August 12, 1968, plaintiff, Mrs. Arline J. Shinn, is the duly qualified testamentary executrix of the succession of James L. Shinn, and personal representative of his estate.

2. At the time of his death, James L. Shinn had been married to the said Arline Jones Shinn since March 5, 1931, and they had lived together continuously and without separation until his death.

3. The said James L. Shinn was born September 23, 1908, and at the time of his death was fifty-eight years old and had a reasonable life expectancy of 16.8 years. Mrs. Shinn was born on July 13, 1912, and, according to the life tables in evidence, had a reasonable life expectancy in excess of that of her husband. Six children were born of their marriage; namely: Patsy, on October 27, 1933; Phillip, on November 9, 1937; Eldon, on December 7, 1941; James, on January 25, 1944; Gene, on July 15, 1951; and Linda, on October 20, 1955.

4. At the time of the casualty, decedent, his wife, their fifteen-year-old son, Gene, and eleven-year-old daughter, Linda, resided together in Morgan City, Louisiana, in a mobile home at a camp furnished by decedent's employer, Mobil Oil Corporation.

5. Mrs. Shinn and the minor children, Gene and Linda, were dependent upon decedent for their support and subsistence. None of the major children lived in decedent's household at the time of the casualty, nor did they depend upon him for their support.

6. Although the evidence does not indicate the length of time which elapsed while the ill-fated helicopter was crashing, we find that the resultant crash was for all practical purposes instantaneous, thus precluding any award for conscious pain, suffering and mental anguish.

7. At the time of his death, decedent, Shinn, was a senior drilling foreman, or tool pusher, employed by defendant Mobil, for whom he had worked continuously since 1936. Mr. Shinn was employed at a salary of $1,135 per month, plus a ten per cent (10%) bonus for working offshore, or a total wage of $1,249.00 per month. He received, also, certain fringe benefits from his employer and was a participant in all of the benefit plans provided by Mobil, including the savings plan, retirement annuity plan, group life insurance plan and medical insurance program.

8. For many months prior to his death, he had been assigned to work aboard the submersible drill barge, Penrod Drill Barge No. 50, on location in the Gulf of Mexico. His employment duties required him to work on the barge for seven days at a time, followed by seven days of office work at Mobil's headquarters in Morgan City. Then he returned for another seven days on the drill barge, followed by seven days of "off time." While he worked offshore aboard the drilling barge, his employer furnished him with food and lodging.

9. Mr. Shinn had been employed by Mobil for more than thirty years, and was scheduled to retire on October 1, 1973. His employment up to the time of his demise was stable and regular. According to information furnished by Mobil, Mr. Shinn was scheduled to receive a salary increment at an annual rate of approximately 5–6 per cent through 1970 and approximately 5½ to 6½ per cent through 1972. The accrued loss of income from the date of death to June 15, 1973, seventy (70) months, approximates $106,000.00. Since this amount has accrued, no present-value discount is required. In addition, we find decedent would have earned future wages until his retirement October 1, 1973, which,

when discounted at a rate of five per cent (5%), which this Court finds reasonable, amounts to approximately $3,865.00.

10. Since decedent worked offshore two weeks out of every month, during which time he was furnished food and lodging without cost to him, and since his personal needs were rather simple (he had no expensive hobbies, did not drink or smoke, did not wear expensive clothes), the Court finds that the decedent required about fifteen per cent (15%) of his income for his personal needs. This percentage is a fair and reasonable apportionment of Shinn's total income attributable to his personal use had he survived.

11. The Court further finds that the contributions of Mobil for hospital and medical insurance to which the Shinn family was entitled, up to the date of Mr. Shinn's retirement amounts to $459.00. This loss has accrued also.

12. The value of Mobil's contributions to the savings plan in which Shinn was a participant, amounting to five per cent (5%) of his annual wages, computed to the date of his retirement, totals approximately $5,493.00 to which the claimants are entitled.

13. Had Mr. Shinn survived and retired as anticipated, he would have received a retirement pension from the date of his retirement until death (his life expectancy at retirement was 10.7 years) at an annual rate of $6,970.00. The gross value of this pension amounts to approximately $90,430.00, and, when discounted at the rate of five per cent (5%), the present value of these benefits is $52,105.00. It is not unreasonable to assume that during his retirement Mr. Shinn would utilize more of his income personally than he was using during his working life. His minor son would have reached majority, and, presumably, would not have depended upon support from his father; and the minor daughter would be approaching majority and presumptive independence. From the evidence given by Doctor Hamilton, the Court finds that the net loss to the family amounts to approximately one-half of the value of the retirement benefits, or approximately $26,053.00.

14. Shinn provided the guidance, care and discipline of a good father to the minors, Gene and Linda, who, were residing in the household. His moral qualities, sense of values, religious beliefs and experience in life, when considered with the close relationship which existed between him and his children, leads the Court to conclude that the minor children have sustained, and during their minority will continue to sustain, further loss from the lack of their father's care, guidance and discipline. This item of damages is assessed at the rate of $2,000.00 per year, per child, throughout the child's minority. The award to Gene for this item of damage is $10,000.00; to Linda, the sum of $20,000.00.

15. Based on the evidence which was uncontradicted and unchallenged, the Court finds that decedent was mechanically skilled and performed services in and about the house, repairing things, maintaining the family automobile, cutting the grass, assisting with the payment of bills, transporting the family in the family car and escorting the family on vacation trips. The Court is aware that services such as these have a value, which the Court estimates at approximately $50.00 per month. The accrued loss and future loss, appropriately discounted, amounts to $8,000.00.

16. The above enumerated elements constitute the damages allowable to the administratrix, individually and in her representative capacity in this action. If the applicable law authorizes an award of general damages, that is to say, damages for nonpecuniary loss, the Court, in such case, would find that the decedent and his wife were happily married for many years, that close and affectionate ties existed between him and all of his children, that each member of his family has sustained a loss from

being deprived of his love, affection, companionship and society, and suffered emotional grief as a result of his demise.

Therefore, the Court would allow damages for this loss in the following amounts:

| | |
|---|---|
| Mrs. Arline J. Shim | $ 25,000.00 |
| Gene Shinn | 25,000.00 |
| Linda Shinn | 25,000.00 |
| Patsy Shinn | 20,000.00 |
| Phil Shinn | 20,000.00 |
| Eldon Shinn | 20,000,00 |
| James Shinn | 20,000.00 |

making a total of $155,000.00 general damages.

■ 17. The pecuniary loss to Mrs. Arline J. Shinn, surviving widow, and Gene and Linda Shinn, surviving dependent children, is as follows:

| | | |
|---|---|---|
| Loss of Wages, to date | $106,000.00 | |
| Future loss of earnings, discounted | 3,865.00 | |
| Total wage loss | $109,865.00 | |
| Less fifteen per cent (15%) attributable to decedent's personal use | − $ 16,470.00 | |
| Net loss to family | | $ 93,395.00 |
| Loss of employer's contribution to savings plan | | $ 5,493.00 |
| Loss of employer's contribution to hospital and medical insurance plan | | $ 459.00 |
| Loss of retirement pension benefits, discounted | $ 52,105.00 | |
| Less fifty per cent (50%) attributable to decedent's personal use | − $ 26,052.00 | |
| Net retirement pension benefits due to family | | $ 26,053.00 |
| Loss of nurture: | | |
| Gene Shinn | | $ 10,000.00 |
| Linda Shinn | | $ 20,000.00 |
| Loss of services, discounted | | $ 8,000.00 |
| TOTAL PECUNIARY LOSS | | $ 163,400.00 |

18. In addition to the lump-sum aware for nurture, that portion of the other pecuniary losses to which the minors are entitled, namely, $15,000.00 to Gene Shinn and $30,000.00 to Linda Shinn, should be distributed to them at the rate of $3,000.00 per year, per child, during minority. The remainder of the award for pecuniary loss, namely, $88,400.00, is recoverable by the widow.

CONCLUSIONS OF LAW

 Mrs. Francis Nell Higginbotham, as Testamentary Executrix of the Succession of Marshall K. Higginbotham, and as personal representative of his estate, has standing to sue for the claims arising from his death under the Death on the High Seas Act and under the General Maritime Law. 46 U.S.C.A. § 688; 46 U.S.C.A. §§ 761, 762; Lindgren v. United States, 281 U.S. 38, 50 S. Ct. 207, 74 L.Ed. 688 (1930); Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Likewise, Mrs. Arline J. Shinn, as Testamentary Executrix of the Succession of James L. Shinn, and as personal representative of his estate, has standing to sue for the claims arising from his death under the Jones Act, the Death on the High Seas Act, and the General Maritime Law. 46 U.S.C.A. § 688; 45 U.S.C.A. §§ 51, 59; 46 U.S.C.A. §§ 761, 762; Lindgren v. United States, *supra*; Moragne v. States Marine Lines, Inc., *supra*; Futch v. Midland Enterprises, Inc., 344 F.Supp. 324 (M.D.La.1972), aff'd Jan. 8, 1973, unreported (No. 72–2900, 5th Cir.).

██ The personal representative of each of the decedents may recover for the actual pecuniary loss occasioned by the death. This is the measure of damages under the Jones Act, the Death on the High Seas Act, and the General Maritime Law. 46 U.S.C.A. § 688; 45 U.S.C.A. § 51; 46 U.S.C.A. §§ 761, 762; Michigan Central Railway Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913); Neal v. Saga Shipping Co., 407 F.2d 481 (5th Cir. 1969); National Airlines, Inc. v. Stiles, 268 F.2d 400 (5th Cir. 1959), cert. denied 361 U.S. 88, 80 S.Ct. 157, 4 L.Ed.2d 121.

██ Under all of the applicable laws, the Jones Act, the Death on the High Seas Act, and the General Maritime Law, the dependent survivors of each of the decedents are entitled to recover damages for the loss of contributions and support that they would have received out of the accrued and future gross earnings of the decedents had they lived. Stark v. Chicago Northshore and Milwaukee Railroad Co., 7 Cir., 203 F.2d 786; Canal Barge Co., Inc. v. Mary Kathryn Griffith, 480 F.2d 11, 5th Cir. 1973; Moragne v. States Marine Lines, Inc., *supra*; National Airlines, Inc. v. Stiles, *supra*.

██ In determining the extent of loss from future earnings, the Court should consider the decedents' actual earnings at the time of death, his work habits, and his prospects for advancement. Petition of Risdal & Anderson, Inc., 291 F.Supp. 353 (D.C.Mass.1968); Petition of Canal Barge Co., 323 F.Supp. 805 (N.D.Miss.1971). The Court should make no deduction for State and Federal income taxes where the yearly estimated earnings, as here, are not clearly above the reach of the middle income scale. Canal Barge Co., Inc. v. Mary Kathryn Griffith, *supra*; Blue v. Western Railway, 469 F.2d 487, 492–496 (5th Cir. 1972), cert. denied, 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688; In re Marina Mercante Nicaraguense, S. A., 364 F.2d 118 (2nd Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967); McWenney v. New York, N. H. and H. R. R., 282 F.2d 34 (2nd Cir. 1960), cert. denied, 364 U.S. 870, 81 S. Ct. 115, 5 L.Ed.2d 93; Cox v. Northwest Airlines, Inc., 379 F.2d 893 (7th Cir. 1967), cert. denied, 389 U.S. 1044, 88 S. Ct. 788, 19 L.Ed.2d 836.

██ Post award losses must be discounted or reduced to present value. We find that under the economic conditions governing this case, a discount rate of five per cent (5%) is proper. Chesapeake & Ohio Railway v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Blue v. Western Railway of Alabama, *supra*.

██ Privation of parental nurture and guidance to a minor child is an element of pecuniary loss long recognized by federal decisions. Michigan Central

Railway Co. v. Vreeland, *supra*; Petition of Risdal, *supra*. The value of parental nurture, as heretofore found, varies directly with its quality and quantity. Moore-McCormick Lines, Inc. v. Richardson, 295 F.2d 583 (2nd Cir. 1961).

■ Loss of the decedents' services is another pecuniary loss allowable under the laws applicable herein. Michigan Central Railway Co. v. Vreeland, *supra*; Dennis v. Central Gulf S. S. Corp., 453 F.2d 137 (5th Cir. 1972). Such services of which the Higginbothams and the Shinns have been deprived in the instant case have a definite value although the value has not been established to the penny. To allow a tort-feasor to avoid paying damages, however, because such damages were to some necessary extent imperfectly established, would be unjust and unbearable. Canal Barge Co., Inc. v. Mary Kathryn Griffith, *supra*; ABC Paramount Records, Inc. v. Tops Record Distributive Co., 374 F.2d 455 (5th Cir. 1967); *See also*, Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed.2d 652, 660 (1946).

Since the decision in *Moragne, supra*, there have been district court decisions awarding damages for non-pecuniary losses, such as loss of society and survivors' grief. In Re Sincere Navigation Corp., 329 F.Supp. 652 (E.D.La.1971); In Re Farrell Lines, 339 F.Supp. 91 (E. D.La.1971. However, the circuit courts which have considered the issue have uniformly denied grief damages in a general maritime action. Canal Barge Co., Inc. v. Mary Kathryn Griffith, *supra*; Greene v. Vantage S. S. Corp., 466 F.2d 159 (4th Cir. 1972); Simpson v. Knutsen O. A. S., 444 F.2d 523 (9th Cir. 1971); In re U. S. Steel Corp., 436 F.2d 1256 (6th Cir. 1970). Consequently, notwithstanding our factual finding that the survivors have suffered loss of love and affection, and grief as a result of the demise of Mr. Higginbotham and Mr. Shinn, we disallow this item of damage. Canal Barge Co., Inc. v. Mary Kathryn Griffith, *supra*.

■ Pre-judgment interest is discretionary with the Court in death claims under the Jones Act, the Death on the High Seas Act, and the General Maritime Law. Doucet v. Willis Drilling Co., 467 F.2d 336 (5th Cir. 1972); National Airlines Inc. v. Stiles, *supra*; In re U. S. Steel Corp., *supra*. In order to compensate the parties fairly and justly for their losses, the Court will allow pre-judgment interest on these claims at the rate applicable in this form, from date of death, August 15, 1967.

Although we are aware of Soileau v. Nicklos Drilling Co., 302 F.Supp. 119 (W.D.La.1969), which allowed an award for expected accumulation of community property, we feel that such an award in this case would be far too speculative.

In determining the amount of the awards for loss of future earnings, we did not take into consideration the decreasing purchasing power of the dollar. Although there are some cases which hold that it is proper to include in this computation costs of living increases, Cunningham v. Bay Drilling Co., 421 F. 2d 1398 (5th Cir. 1970); Canal Barge Co., Inc. v. M. K. Griffith, *supra*, we feel that such an additional award would have to await the final outcome of the Fifth Circuit Court of Appeals en banc rehearing of Johnson v. Penrod Drilling Co., 475 F.2d 1404.

Plaintiffs should submit a judgment for execution in accordance with Rule 9(e) of this Court.