(40 South. 851.)

No. 15,757.

BUFORD BROS. v. SONTHEIMER.

In re BUFORD BROS.

(Jan. 2, 1906. Rehearing Denied March 26, 1906.)

1. PARTNERSHIP—SILENT PARTNERS — ESTOPPEL.

Defendant who in fact was not a partner in the firm of Talbot & Hilliard did not render

himself responsible to the creditors of that firm as a silent partner by estoppel, under the following circumstances: Defendant was an undertaker and had a great many carriages, and at all times one or more of these were under repair in the shop of Talbot & Hilliard who were carriage repairers. To keep an eye on this work, defendant was in the shop every day. He would give instructions to the workmen in reference to the work. He lent money to Talbot & Hilliard, and to reimburse himself accepted for collection accounts of theirs against their customers, and kept the money he thus collected. Having furnished the funds for obtaining the delivery of certain expensive rubber tires, he was consulted as to the advisability of letting certain customers of the firm have these tires on a credit. The shop of Talbot & Hilliard having been closed by seizure, he opened a shop a few doors away and removed thither from the shop of Talbot & Hilliard his own repair work then on hand, and shortly thereafter received there the repair work that Talbot & Hilliard had had on hand for others. Some of the goods of Talbot & Hilliard, without his knowledge, were surreptitiously removed from the shop of Talbot & Hilliard during the seizure and taken to this new shop. He employed in this new shop some of the workmen from the shop of Talbot & Hilliard.

2. LIBEL—PROBABLE CAUSE FOR STATEMENTS.

The former bookkeeper of Talbot & Hilliard, and also one of the workmen of that firm, having stated the above facts to plaintiff's counsel, together with others tending to show that a considerable portion of the stock of goods of Talbot & Hilliard had been surreptitiously conveyed to the shop of defendant, *held*, that in setting out the facts relied upon for contending that defendant was responsible as a silent partner by estoppel in the firm of Talbot & Hilliard, plaintiff had probable cause for alleging that defendant had appropriated the assets of Talbot & Hilliard to the detriment of the creditors of that firm, and brought about the bankruptcy of that firm.

(Syllabus by the Court.)

Action by Buford Bros. against Isaac Sontheimer, in which defendant filed a reconventional demand. The Court of Appeal affirmed a judgment dismissing plaintiffs' suit and rendered judgment in favor of defendant on his reconventional demand, and plaintiffs apply for certiorari or writ of review. Reversed.

Lyle Saxon and Saunders & Gurley, for applicant. Henry Lawrence Lazarus, Herman Michel, and David Sessler, for respondent.

PROVOSTY, J. This is a suit on an open account for goods sold on credit by the plaintiff firm, doing business in Nashville, Tenn., to the Talbot & Hilliard Carriage Co., a New Orleans firm. Defendant is sought to be held as a silent partner. Talbot & Hilliard were carriage repairers. Their establishment was seized for rent, and thereupon they surrendered in bankruptcy.

Defendant denied that he was a partner, and instituted in reconvention a libel suit based upon the following allegations of the petition:

"The petitioner avers, that in accordance with the said agreement, the said Isaac Sontheimer made advances to the said firm and partnership of the Talbot Hilliard Carriage Company, and collected the funds and the outstanding accounts, and consumed the stock of the said Talbot Hilliard Carriage Company, and applied same to his own personal use and profit in his undertaking business, and continued to do so up to the time of the failure of the said Talbot Hilliard Carriage Company, and the bankruptcy of the said firm on the 21st day of December 1900, and your petitioner shows, that the amount of assets and outstanding accounts collected, and the stock consumed by the said Isaac Sontheimer greatly exceeded any and all advances made by the said Isaac Sontheimer, and that by these said acts of the said Isaac Sontheimer made defendant herein, in collecting the assets, and consuming the stock of the said Talbot Hilliard Carriage Company, using same for his own profit and advantage, caused the failure and bankruptcy of the said firm, and was a gross and flagrant violation of law, and deprived the creditors of the said firm of their legal and just rights in the premises.

"That the said acts of the said Isaac Sontheimer in collecting and dissipating the said funds, and consuming the stock of the partnership of the Talbot Hilliard Carriage Company, and applying same to his own personal use and advantage, has rendered him liable under the law as a partner in the said firm, and partnership of the Talbot Hilliard Carriage Company, and he therefore, becomes liable in solido with the said William S. Talbot, and the said Joseph S. Hilliard to the creditors of the said firm, of which your petitioner is one."

The district court dismissed the suit, and rejected the reconventional demand. Defendant appealed. Plaintiff did not appeal, but in the appellate court joined in the appeal, and prayed judgment. The Court of Appeal affirmed the judgment in so far as

dismissing plaintiff's suit; but gave judgment for $1,000 on the reconventional demand. The matter is now before this court on writ of review. Much confusion would have been avoided if the suit for libel based on the allegations of the main suit had not been permitted to be brought until the main suit had terminated. Unfortunately, it is too late now to mend the situation.

Defendant is sought to be held on the principle that:

· "A partnership may be created by construction of law as to third persons, although neither intended nor actually existing as between the parties themselves." City v. Gautheraux, 32 La. Ann. 1126.

Defendant's immixture in the affairs of Talbot & Hilliard was of such extent and character as to give considerable color to plaintiff's contention; but now that it has been fully explained the contention is so evidently unfounded that plaintiff's learned counsel must be taken to be persisting in their demand more on the general principle that the doing so can do no harm than in the hope that the demand can be successful.

The learned counsel for defendant argue that the allegations of defendant's having taken possession of the assets of Talbot & Hilliard in excess of the advances made by him to them, and of having by his acts brought bankruptcy to that firm, imputed moral and legal wrong to defendant, and were irrelevant to the issue, which was solely as to partnership vel non. We do not agree that the facts thus alleged were entirely irrelevant. Where a person is sought to be held as a partner by estoppel, a considerable latitude must be allowed in the setting forth of the facts and circumstances going to serve as a basis for the estoppel. It is not the case of a clean-cut issue to which a pleader may be confined, but of the recital of a general line of conduct upon which the court is asked to found an equitable estoppel.

Neither in such a case, however, nor in any other, is the litigant privileged to make defamatory statements against his adversary unless he has probable cause for so doing; and hence we must pass to the question whether plaintiff had probable cause for the allegations complained of; and, in doing so, we promise that we much suspect that the learned counsel of defendant rely more upon there not having been probable cause for the statements than upon the statements having been irrelevant.

The attorney who prepared and filed the petition made these allegations upon information not derived from his clients, who were nonresidents and knew nothing of the matter. Strange to say, however, this attorney was not permitted to state what investigation he had made previous to filing the suit and what information he relied on in making the allegations. Two of the witnesses, however, mention incidentally that the facts they testified to were a subject of discussion among the creditors of Talbot & Hilliard, and one of these witnesses further states that plaintiff's counsel sought him out and elicited information from him. There is enough, therefore, in the record to enable the court to assume that plaintiff's attorney, Mr. Saxon, when he filed the suit, was possessed of all the facts testified to by these two witnesses.

Now, even if, contrary to rule, these witnesses were not then more liberal in their statements than they were upon the witness stand, and even if their statements then were restrained to the proportions to which the cross-examination has trimmed them down, there was probable cause for making the allegations. We hasten to say, however, that the court accepts as true but a bare modicum of what these witnesses have testified to, and acquits Mr. Sontheimer of all, even the least suspicion of wrong, finding in his conduct nothing but what was not only entirely proper but praiseworthy.

In a spirit of kindness he helped Talbot &

Hilliard with money, who, more mechanics than business men, were all the time struggling along, strong, doubtless, in ability to do good work but weak in the legs financially. Having let them have the money, he, as a business man, was solicitous of getting it back, and watchful of his chances in that direction. He took upon himself the collection of accounts and kept the money in reimbursement. Having furnished the funds required for obtaining the delivery of expensive rubber tires, he was consulted as to the advisability of letting certain customers have these tires on a credit. He being an undertaker, with a great many carriages, and having at all times a great deal of repair work going on for him in the shop of Talbot & Hilliard, was in the shop a great deal every day, and had more or less to say as to his own work. When the end of Talbot & Hilliard came, that is to say, when the sheriff seized their establishment, he opened a shop and hired some of the same workmen and took there his own unfinished work, and, also shortly afterwards, the other unfinished work from the shop of Talbot & Hilliard was taken there. All this certainly he could freely do without exposing himself to liability as a partner.

To these facts must be added others. The new shop opened by defendant was only a house or two removed from the shop of Talbot & Hilliard and connected with it through the backyard. Some of the goods of Talbot & Hilliard, perhaps a considerable part, were removed surreptitiously during the sheriff's seizure—through a back window. A bundle of runnels (which we understand to be iron rims for rubber-tired wheels), thus removed, found its way into defendant's establishment through an aperture caused by a missing plank; not, however, with defendant's knowledge, and still less his connivance.

The foregoing facts, now seen in the white light of the full trial of the case, that is to say, in their natural shapes and reduced to their true proportions, must wear a very different appearance from what they seemed to plaintiff's attorney as he saw them through the prism of the statements of Driscoll & Bixby, the two witnesses above referred to.

The former was the general utility man of Talbot & Hilliard. He kept such books as were kept by that firm. Bixby was one of the workmen. Both of them testify to having seen in defendant's establishment goods that they themselves had helped to remove from the shop of Talbot & Hilliard during the seizure. Driscoll says defendant was present when some of these goods were removed, and must have seen the removal. Bixby, whether he really so believed or not, sought to give out the impression in his testimony that he was convinced that a large part of the goods of Talbot & Hilliard had found their way into defendant's shop. Both these men, even on the witness stand seemed to have been highly prejudiced against defendant; even as witnesses under solemn oath in a court of justice with all parties present, they seemed to have been somewhat reckless in their statements.

Though the court does not believe these witnesses now, except when corroborated, there was no reason why plaintiff's counsel should not have acted upon their statements. One had been the bookkeeper, and both spoke as of facts within their own knowledge. Under these circumstances, and especially in view of the utter absence of actual malice on the part of plaintiff, we are constrained to differ with the Court of Appeal and to agree with the district judge that the reconventional demand is not well founded.

It is therefore ordered, adjudged and decreed that the judgment of the Court of Appeal be set aside and that the judgment of the district court, dismissing plaintiff's suit and rejecting the reconventional demand, be reinstated and affirmed, and that plaintiffs

pay the costs incident to the main suit; defendant to pay the costs incident to the reconventional demand together with the costs of the appeal and of this court.