(55 South. 375.)

No. 18,695.

ROBERTSON et ux. v. TOWN OF JENNINGS.

(May 8, 1911.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 791*)—DISMISSAL—WAIVER OF MOTION—ANSWER PRAYING FOR AMENDMENT OF JUDGMENT.

The answer to an appeal which prays for an amendment of the judgment appealed from waives the motion to dismiss such appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3133–3136; Dec. Dig. § 791.*]

2. STATUTORY PROVISIONS.

Under Civ. Code, art. 2315, as amended and re-enacted by Act No. 120 of 1908, the father and mother or either of them, in default of a widow or children, succeed to the right of action for the recovery of damages of their child, who loses its life through the fault of another, and they have also a right of action conferred by the statute to recover the damages sustained by them in consequence of such death.

3. DEATH (§ 31*)—HUSBAND AND WIFE (§ 127*)—PERSON ENTITLED TO SUE—PARENTS—ACTION BY WIFE.

The right of action conferred upon a married woman by Act No. 68 of 1902, p. 95, for the recovery of damages resulting from personal injuries, includes the right to recover for injuries to feelings as well as physical injuries. Hence a married woman, whose child loses its life through the fault of another, may recover by herself alone for mental suffering caused by such death, and the amount which she may recover becomes her separate property.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–46; Dec. Dig. § 31;* Husband and Wife, Dec. Dig. § 127.*]

4. NEGLIGENCE (§ 117*)—PLEADING—AMENDMENT.

The plea of contributory negligence set up by way of defense to an action in damages for personal injuries does not of necessity admit negligence on the part of the defendant, and an amendment is permissible, making it plain that the plea was intended merely to charge plaintiff with negligence which contributed to the injury.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 117.*]

5. MUNICIPAL CORPORATIONS (§§ 768, 803*)—SIDEWALKS—MAINTENANCE—NEGLIGENCE.

It is gross negligence for the authorities of a municipal corporation to allow a sidewalk composed of wooden stringers, laid upon the ground in rows parallel with the line of the street, with planks nailed upon them, crosswise, to fall into such a condition that some of the planks are missing, leaving holes in their stead, others are loosened from the stringers, so that they are liable to tilt and shift their positions, and others are so rotten that they break when trodden upon; and it is not such contributory negligence as will preclude the recovery of damages for injury sustained by reason of such condition where it appears that the person charged with such contributory negligence, seeing a hole left by a missing plank, and seeing, upon the farther side of the hole, a plank, apparently sound, steps across the hole onto the plank, and is precipitated to the ground by the breaking of the plank, which proves to be rotten.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1622–1625, 1673, 1682; Dec. Dig. §§ 768, 803.*]

6. MUNICIPAL CORPORATIONS (§ 805*)—SIDEWALKS—RIGHTS OF PERSONS USING.

A person who has seen a sidewalk in a town in a bad condition will not be expected to presume that it has continued so for an indefinite period. To the contrary, he has a right to presume that the town authorities have discharg-

ed the mandatory duty, which the law imposes, to make the sidewalk safe for life and limb.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1677, 1683; Dec. Dig. § 805.*]

7. DEATH (§ 89*)—DAMAGES—MENTAL SUFFER-ING OF PARENT.

Damages for the sorrow and mental suffering of the parents for the loss of an infant child, whose death is caused by the fault of another, are compensatory and not punitory, and, not being susceptible of specific proof, may be assessed within the legal discretion of the jury or of the court.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 118; Dec. Dig. § 89.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by Lee Robertson and wife against the Town of Jennings. Judgment for plaintiff Lee Robertson, and defendant appeals. Affirmed.

Heinen & Modisette, for appellant. Goudeau & Barbe, for appellee.

### Statement of the Case.

MONROE, J. Plaintiffs sue for damages resulting to them from injuries to, and the death of, their infant child, which was thrown from the arms of its mother, who, whilst carrying it, sustained a fall by reason of the defective condition of one of defendant's sidewalks.

Defendant, by way of answer, denied generally the allegations of the petition, and alleged that "plaintiff is, and was, guilty of contributory negligence," and that "plaintiff is estopped by his own admissions." It then filed an amended answer, alleging that the paragraph in the original answer to the effect that "plaintiff is, and was, guilty of contributory negligence," had been "inadvertently thrown in," and praying that there be substituted in its place the following:

"And, further reserving all rights, defendant shows that said injury or injuries to plaintiffs and their said child, if any, which is specially denied, resulted from, and were caused by, the negligence and carelessness of plaintiffs, and

without any fault or negligence on the part of defendant or its agents or officers."

It then filed an exception to the right of action of Lee Robertson suing in his own behalf, based apparently upon the theory that the only right of action which arose out of the accident was that in favor of the child, to which the parents may have succeeded. And, finally, it excepted that the petition discloses no right or cause of action as to Mrs. Robertson, alleging, however,

"in the alternative, that should the court hold that a cause of action in favor of the wife * * * is disclosed, * * * which defendant specially denies, * * * said petition discloses no cause or right of action in favor of the husband, * * * and that said husband, as head and master of the community, should be ordered and compelled to elect * * * in whose behoof he is here suing—whether for his own personal account or in the capacity to authorize and assist his said wife."

Plaintiffs moved to strike out the amended answer and the motion was overruled, as were defendant's exceptions (so far as appears from the record), after which the case was tried before the court and a jury, with the result that there was a verdict in favor of "the plaintiff Lee Robertson" in the sum of $2,632, "damages for mental suffering and agonies at the death of their child, * * * and $18 for medical and funeral expenses, with 5 per cent. interest from date of judgment until paid," which verdict and judgment were approved by, and made the judgment of, the court.

Defendant has appealed, and plaintiff Lee Robertson first moved to dismiss the appeal on the grounds that the application therefor was made by motion, when it should have been made by petition, and that defendant has failed to give any appeal bond. He then answered the appeal, praying that the amount of the award be increased to $6,000. The facts established by the evidence are as follows:

Plaintiffs are a young married couple who were living about 15 miles from Jennings,

and the infant in question was their only child, and at the time of the accident was about two months old. The husband earned his livelihood by farming and by hauling with his teams. On April 4, 1909, he hauled a wagon load of household effects from his neighborhood to Jennings for Mrs. Albert Clifton, and his wife and baby and Mrs. Clifton and her baby and servant rode in the wagon. Plaintiffs spent the night at the home of the Cliftons, and the next morning, about 8 o'clock, started to walk to the house of Mr. Conklin, the wife carrying the baby in her arms, and the husband carrying a suit case. They took the course that naturally suggested itself, along the west side of Lake Arthur avenue, going in a northerly direction, with a view of reaching West Division street, on which Mr. Conklin lives. Upon the east side of the avenue, there was no sidewalk, and the ground was so covered with grass and weeds as to be practically impassable. On the west side there was a sidewalk consisting of three rows of wooden stringers, laid on the ground, parallel with the line of the street, across which were planks, probably 10 or 12 inches wide, and say 4 feet long, which had originally been nailed to the stringers. The stringers and planks had however become more or less rotten, and some of the planks were missing, whilst others would tilt up when trodden upon, and others, again, would break. Mrs. Robertson came to a place where a plank was missing, and stepped over it, upon a plank which, being rotten, broke beneath her weight; and she fell, dropping her baby to the ground. She arose and picked the baby up, and the party proceeded to Mr. Conklin's, whence a physician (Dr. Frye) was immediately sent for, and he says that he examined the child; and further, as follows:

"I found a swelling over the right parietal bone. * * * The child was slightly fretful, but quieted when put to the breast. The child had no fever; pulse not accelerated. * * *

The accident, I was informed, had occurred about 30 minutes previous to my examination. I told Mr. Robertson * * * that the child did not appear to be seriously injured, but cautioned him that a serious aspect might occur at any time; that, while the child did not appear to be seriously injured, it was impossible from an examination at that time to say that something would not come up later. He asked me if it would be safe to take the child away on the next train. I told him that it would probably be safe, but could not assure him that it was. He stated to me that they were intending to leave on the next train, but would defer going until the noon train, unless I would assure him that there was no danger in going sooner. I cautioned him that, if anything further developed, to let me know at once, but heard nothing more, until several weeks later he * * * told me that the child had died one week after I had seen the patient."

The doctor appears to have misunderstood Robertson as to the manner in which the latter intended to go home, being, very likely, ignorant of the fact that he had his wagon. Robertson says:

"He just made a mistake in the way that I was to get home. That is all. I told him I wanted to go back that evening. I told him I wanted to go in a couple of hours, and he said that I had better wait until noon. * * * He told me that, if the child didn't get along well—if I saw any indication of its being worse—to come and let him know about it; otherwise, that it would be all right to go home."

And he and his wife carried the baby home in the wagon, and, although it (the baby) did not appear to be quite so well as it had been there seemed to be nothing serious in its condition until April 12th, when, there appearing some unfavorable symptoms, plaintiffs sent for another physician (Dr. Miller, of Lake Arthur) who certifies, in part, as follows:

"Upon a personal examination of the child, I found a tumor on the right side of the head. * * * I told the parents that the case was a hopeless case, and that it would die in all probability that evening. Nothing was done for the child by me, with the exception of giving two or three bromide powders, to quiet convulsions, should the child develop them: I told the parents * * * that their child was suffering from a tumor caused by a fracture of the bone or laceration of the membrane of the brain, as I could not tell exactly which, on account of the tumor being situated about the sutures of the skull. My conclusions were that the bones

were apart, allowing the fluid of the brain to escape beneath the skin and its membrane, thereby causing the tumor, called pseudo hydro meningocele, or a tumor of the brain, from a rupture of the skull. The tumor was an acquired tumor, and not a congenital tumor, or one which came with birth."

In that connection, another physician, Dr. Arceneaux, certifies that he attended upon the occasion of the birth of the child, and that it was a normal baby, with a perfectly normal head; and from other witnesses it appears that up to the time of the accident the child had continued to all appearances to be normal and healthy. Still another physician, Dr. Watkins (called by defendant as an expert), testifies that a blow upon the head of an infant might produce meningocele, or might cause such a tumor to increase in size and activity; that, where a child receives an injury, such as that described, and goes seven or eight days, or any number of days, without surgical attention, every day increases the chances of its dying, or becoming a cripple or paralytic; that it would, however, be impossible to tell immediately whether the results would be serious or not; and that a surgeon would be likely in 12 or 15, or, at most, 24, hours, to know whether an operation would be advisable. The doctor also testifies that congenital tumors are very rare, and that a case would be an exception. The evidence abundantly shows that the sidewalk upon which Mrs. Robertson fell had been entirely neglected by the municipal authorities, and had been left to itself or to the particular property owners in front of whose residence it passed, and that it was in bad condition. Mrs. Robertson had never walked on it before. Her husband had done so on a few occasions, but how long before the accident does not appear. He says that he had observed that it was in bad condition, and that he considered it unsafe, and no doubt the general bad condition was obvious upon the morning of the accident; but he also says:

128 LA.—26

"I never thought of any serious accident happening. * * * I didn't feel like getting right in the middle of the street. There was no walk on the other side of the street."

## Opinion.

[1, 2] The answer to an appeal, which prays for an amendment of the judgment, waives the application to dismiss. Louque's Dig. p. 45 (b), No. 3. The law as it now stands provides that the right of action of a person whose death is caused by the fault of another "shall survive * * * in favor of the children or widow of the deceased, or either of them, and, in default of these, in favor of the surviving father and mother, or either of them, and, in default of any of the above persons, then, in favor of the surviving brothers and sisters, or either of them. * * * The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child, or husband, or wife, or brothers, or sisters as the ——— may be." Act No. 120 of 1908, p. 178.

In bringing this suit, plaintiffs exercised the right of action thus conferred directly upon them, and they claim nothing by virtue of the right of their child which survived in their favor. The exception predicated upon the theory that the latter was the only right which they (or rather, the father, against whom, alone, the exception appears to be directed) could assert was therefore properly overruled.

[3] Act No. 68, p. 95, of 1902, provides:

"That article 2402 of the Revised Civil Code of 1870 be amended and re-enacted so as to read as follows: Art. 2402. This partnership or community consists of the profits of all the effects of which the husband has the administration, either of right or of fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during marriage, either by donation, made jointly to them both, or by purchase, or in any other similar way, and, although the purchase be only in the name of one of the two and not of both, because, in that case, the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this

community, but shall always be and remain the separate property of the wife and recoverable by herself alone; provided, where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws."

Construing the statute thus quoted, this court has said:

"It might perhaps be argued that the application of the words 'personal injuries,' as used in the statute, should be confined to cases of physical injury to the person of the wife, but we take those words to be used in their commonly accepted sense, and, as thus used, as meaning any injuries to feeling resulting from abuse, slander, and libel. It might also be argued that, inasmuch as this suit was not brought by the wife alone, but by the husband and wife, and was maintained in the district court as the suit of the husband acting as master of the community, it should now be dismissed. But the counsel for defendant filed an exception of misjoinder, which, interpreted by their brief, meant that in their opinion the husband alone had the capacity to bring the suit. The wife, on the other hand, by joining in the suit, as brought, confirmed and ratified the proceeding." Martin v. Derenbecker, 116 La. 499, 40 South. 851.

In the case thus cited, the husband and wife together sued for damages resulting from defendant's slander and abuse of the wife, and it was held that the judgment which was obtained in the district court and which was affirmed by this court was the property of the wife. In the instant case the right of action of plaintiffs' child survived in their favor as a common inheritance, but they are not here asserting that right. Beyond that they each had the right of action which they are asserting, and which is conferred upon them directly by the statute, and the husband had, moreover, the right of action which as master of the community he possessed before the statute in question (or Act No. 71, of 1884, which, preceded it) was adopted, for the recovery of the expense to which the community was subjected by reason of the injury inflicted upon, and death of, the child. Hence defendant's exception (that the petition disclosed no cause of action as to Mrs. Robertson, the mother of the deceased child, and, "in the

alternative, * * * should the court hold that a cause of action in favor of the wife * * * is disclosed, * * * which defendant specially denies, * * * that said petition discloses no cause or right of action in favor of the husband, * * * and that said husband, as head and master of the community, should be ordered and compelled to elect * * * in whose behalf he is suing —whether for his own personal account or in the capacity to authorize and direct his said wife") was also properly overruled. [4] The plea of estoppel, set up by defendant, is predicated upon the allegations of the petition to the effect that the unsafe condition of the sidewalk where the accident occurred was well known, and upon the testimony adduced in support of those allegations, and the plea may be regarded as merged in that of contributory negligence, in regard to which latter we are of opinion that the judge a quo ruled correctly in declining to strike out the amended answer, wherein defendant explains that it did not, by alleging in its original answer that plaintiffs had been guilty of contributory negligence, intend to admit that it (defendant) had been guilty of negligence. The allegation of the original answer, fairly construed, meant that plaintiffs were guilty of negligence which contributed, not to any admitted negligence on the part of defendant, but to the accident which caused the injury to the child, and the amended answer merely served to make the meaning plain.

[5] Upon the merits we find nothing in the defense which calls for very serious consideration. Lake Arthur avenue is admitted to be one of the main thoroughfares leading south from Jennings, and it is abundantly proved that the only sidewalk with which it was (at the time of the accident) provided was little better than a long trap, or series of traps, from the operations of which it would have been rather difficult for the most

careful pedestrian to escape being thrown to the ground. The transverse planks, constituting the surface of the walk, were here and there missing altogether, leaving holes in their stead; in other places, the stringers having rotted and the nails which were intended to fasten the planks to them having rusted and loosened their hold, the planks, if trodden upon near their ends, were liable to tilt up; and at the place of the accident there was a hole, left by a missing plank, followed by a plank, apparently sound, but in reality so rotten that when Mrs. Robertson, stepping across the hole, rested her weight upon it, it gave way, and precipitated her to the ground. No one testifies that there was any safer sidewalk by which plaintiffs could have reached the house to which they desired to go from that whence they started; but it is said that, the danger being known, they must be held to have assumed the risk. We do not, however, find that the danger was known to the plaintiffs; for Mrs. Robertson had never seen the sidewalk before, and Mr. Robertson testifies that he had been on the avenue but a few times, and does not say when. It may therefore have been months or years before the date of the accident, and we hardly think that any presumption in regard to the stability and continuity of things can be invoked against him in the matter. To the contrary, if days, weeks, months, or years before he had observed the sidewalk to be in an unsafe condition, he would have been theoretically justified in assuming that it would not be allowed to remain so, since the mandatory duty of the city authorities was to make it safe, and he had the right on the morning of the accident to assume that they had discharged that duty.

It is further said, however, that the danger was obvious, and that one cannot deliberately encounter an obvious danger, and then hold another for the consequences. But pretermitting for the moment the question whether a municipal corporation whose duty it is to keep its sidewalks in such a condition as not to imperil the lives of those who have the right to use them can willfully and deliberately neglect that duty, and, by keeping its sidewalks in an obviously dangerous condition, shift the burden of responsibility upon those who 'may receive injury thereby, we do not find that the danger which Mrs. Robertson encountered was an obvious one. She saw a dangerous hole in the sidewalk, and, stepping across the hole, which was the obvious danger, rested her weight upon the plank, which, though it appeared to be safe, was, in fact, rotten, and, breaking in two, caused her to fall. The general rule applicable to cases of this character is that persons lawfully making use of the streets and sidewalks within the limits of municipal corporations have the right to assume that they are safe, and that, where one sustains injury by reason of the unsafe condition of such thoroughfares, the burden of proof to show that he contributed to such injury by his own negligence rests upon the corporation. Buechner v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; McCormack v. Robin et al., 126 La. 594, 52 South. 779.

[6] The proposition upon which the defense relies is, in effect, that plaintiffs, seeing that the sidewalk was in a bad condition generally, ought not to have used it at all, and that by using it under such circumstances they assumed the risk of all the consequences. Referring to a similar proposition in a case in which the party injured actually stepped into a hole in a sidewalk of the existence and location of which she was well informed and which she had frequently stepped across, and at the moment of the accident was attempting to step across, the Supreme Court of the United States, through Mr. Justice White, has said:

"When analyzed, the proposition comes to this, that no person can as a matter of law, without assuming all the risk, use the streets of a municipality where he knows of a defect therein, even although it be that in the exercise of a sound judgment it might be deemed that, with ordinary care and prudence, the street could be used with safety. The result of admitting the doctrine would be to hold that all persons in making use of the public streets assume all risks possibly to arise from every known defect or danger. * * * Indeed, the proposition would imply that every one who used the public streets with the knowledge of a defect existing therein would be guilty, if an injury was by them suffered as a result of such defect, of contributory negligence without the existence of any neglect whatever; for this would necessarily result from saying that one who had made a careful use of the streets was yet guilty of neglect in doing so. * * * Reduced to its last analysis, the principle contended for but asserts that the ordinary rules by which negligence is to be determined do not apply to the use of the public streets, since those who use such streets with knowledge of a possible danger to arise from a defect therein must as a matter of law have negligence imputed to them, although in choosing to make use of the streets and in the mode of use the fullest degree of judgment and care was exercised. The result of this would be to relieve the municipality of all duty and consequent responsibility concerning defects in highways, provided only it choose to give notice of the existence of the defects." Mosheuvel v. District of Columbia, 191 U. S. 258, 24 Sup. Ct. 57, 48 L. Ed. 174.

According to the doctrine of the case cited, the plaintiff Mrs. Robertson would not have been guilty of contributory negligence if in attempting to step across the hole left by the missing plank she had stepped into it. As a matter of fact, however, she was successful in her attempt to step across the hole, and she deliberately and with intention placed her foot upon a plank constituting part of the sidewalk upon the other side, because it appeared to be safe, and she believed it to be so, which is just the reverse of deliberately encountering an obvious danger.

[7] Our conclusion upon the point thus considered, then, is that the injury here complained of was caused by the fault of the defendant, which is in no wise excused by any contributory negligence on the part of the plaintiff. The learned counsel for defendant suggest that compensatory damages alone

can be allowed for injury sustained by reason of the death of another; that damages for bereavement, sorrow, and mental suffering cannot be included therein; and that the damages to be recovered in a case such as this must be proved. The questions thus presented were considered in the case of Underwood v. Gulf Refining Co., 55 South. 641, post, p. 968, and it was there held that damages for bereavement, sorrow, and mental suffering are compensatory, and not punitory; that under C. C. 2315, as amended by Act No. 120 of 1908, the persons therein specified may, under the conditions therein stated, recover damages for injury to feelings, and hence, in effect, that, in default of widow or children, a parent may recover damages for mental suffering resulting from the death through the fault of another of a child; and that in the assessment of such damages much is left to the discretion of the judge and jury. The authorities relied on as supporting the conclusion stated are discussed in the opinion referred to, and we deem it unnecessary to repeat here either the reasoning which led to those conclusions or the citations of authority. So far as we have been able to discover from the transcript, the judge a quo overruled all of the exceptions interposed by defendant, including the exception that as to Mrs. Robertson the petition discloses no cause of action. The case appears nevertheless to have been thereafter tried upon the theory that Mr. Robertson alone was before the court as plaintiff, and, as counsel for defendant say in their brief that the exception mentioned was sustained, we assume that such was the case. However that may be, the verdict and judgment appealed from are in favor of the father alone, and the mother has neither appealed nor prayed for amendment, and no amendment can be made for her benefit. Whether the jury would have awarded a larger sum if she had remained in

the case, or whether they considered that, in awarding the amount upon which they agreed, to the father, the whole of it would go to him as the head of the community, and that the mother would probably eventually receive her proportion as partner in the community, we have no means of knowing. It is shown that Lee Robertson expended $8 for medical attention to his child and $10 for funeral expenses. The aggregate of these items ($18) unquestionably returns to the community. Whether the balance of the amount awarded inures to the community or to Lee Robertson as the father of the deceased child individually need not be here decided. As the matter stands, whilst we appreciate the fact that money will not replace the lost child, we do not feel authorized to increase the amount of the award.

Judgment affirmed.