744

In the Matter of the Complaint of Sincere Navigation Corporation, as owner of the S/S HELENA, for Exoneration from or Limitation of Liability and the Oceanus Mutual Underwriting Association, Ltd.

SINCERE NAVIGATION CORPORATION and the Oceanus Mutual Underwriting Association, Ltd., Appellants,

v.

UNITED STATES of America et al., Appellees.

Virginia O'QUINN, Individually and as Administratrix of the Succession of Walton E. O'Quinn and Natural Tutrix of the minor, Cathleen Caprice O'Quinn, Cross-Appellant,

v.

The OCEANUS MUTUAL UNDERWRITING ASSOCIATION, LTD., et al., Cross-Appellees.

UNITED STATES of America, Cross-Appellant,

v.

S/S HELENA, her engines, etc., in rem and Sincere Navigation Corporation, et al., Cross-Appellees.

No. 72–2254.

United States Court of Appeals, Fifth Circuit.

April 2, 1976.

Clarence A. Frost, New Orleans, La., for Sincere & Oceanus.

Jerry G. Jones, J. B. Jones, Jr., Cameron, La., for O'Quinn and DeLoach.

Joseph M. Brush, New York City, Patrick Burke, New Orleans, La., for appellants.

Gerald J. Gallinghouse, U. S. Atty., John R. Schupp, Asst. U. S. Atty., New Orleans, La., Neal D. Hobson, Charles M. Steen, New Orleans, La., Baker & Abbott, Allen van Emmerik, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for United States.

Walter H. Fleischer, Dept. of Justice, Washington, D. C., George A. Frilot, III, E. Jack Green, Jr., New Orleans, La., for Jacks and Lundquist and others.

A. J. McNamara, Metaire, La., for Fregia.

Joe L. Horne, New Orleans, La., for Chas. Morrison, June Morrison and Richard Kraus.

Louis B. Merhige, New Orleans, La., for Campisano.

Raymond A. McGuire, New Orleans, La., for Kapowski.

Before WISDOM, CLARK and RONEY, Circuit Judges. ·

WISDOM, Circuit Judge:

This case presents several questions concerning damages for wrongful deaths occurring in state territorial waters.

The freighter Helena collided with the United States Coast Guard vessel White Alder at about 6:30 p.m. on December 7, 1968, on the Mississippi River near Bayou Goula, Louisiana. Seventeen of the crewmen of the White Alder were killed, and the lives of three were miraculously spared. Two days after the collision, Sincere Navigation Corporation (Sincere), the owner of the Helena, filed a petition for exoneration from or limitation of liability. Claims for damages were filed in that proceeding by two of the surviving crewmembers and by relatives of many of the decedents. Most of these claimants also later filed complaints against Sincere's insurer, the Oceanus Mutual Underwriting Association, Ltd., under the Louisiana Direct Action Statute.[1]

On April 17, 1972, the district judge issued his most recent opinion in this case.[2] His judgments awarding damages were immediately appealed. This Court withheld disposition of the case pending issuance of our opinions in *Johnson v. Penrod Drilling Company*, 5 Cir. 1973, 469 F.2d 897, *aff'd en banc*, 1975, 510 F.2d 234, which have a direct bearing on the proper elements of damages to be

---

1. The individual plaintiffs will be referred to as the claimants.

2. During the three years between the filing of the complaints and the issuance of his last opinion, the diligent trial judge, Judge Alvin Rubin, was on top of the case; he conducted two full-blown trials (one on liability, one on damages) and several ancillary proceedings, received a detailed special master's report on the damages issues, and wrote at least nine opinions on various aspects of the case. Four of these opinions have been published: *In re Sincere Navigation Corporation*, E.D.La.1969, 295 F.Supp. 610; 1970, 317 F.Supp. 1; 1971, 327 F.Supp. 1024; 1971, 329 F.Supp. 652.

considered in awarding damages to the individual claimants. In the nearly three years that have passed since the district judge's last opinion, the relevant law has undergone substantial change. As a result of these developments, regrettably, we must again delay final disposition of the case by remanding it to the district court for the resolution of certain important issues.[3]

## I.

Before discussing these issues, it will be necessary to determine what law governs this case. The claimants filed suit in 1968 and 1969, some alleging diversity jurisdiction and others alleging both diversity jurisdiction and the general maritime law. Under either jurisdictional allegation, the governing law would have been the Louisiana wrongful death statute, La.Civ.Code Art. 2315.[4] Louisiana courts have held this article permits damages for the mental suffering of surviving relatives. *See Cambrice v. Fern Supply Co., Inc.,* La.App.1973, 285 So.2d 863, 866 n. 5; *Robertson v. Town of Jennings,* 1911, 128 La. 795, 55 So. 375, 379–80.

In 1970 the Supreme Court created a new cause of action for wrongful death under the general maritime law. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, *overruling* The Harrisburg, 1886, 119 U.S. 199, 7. S.Ct. 140, 30 L.Ed. 358. The Court did not define the measure of damages under this new action, choosing to "await further sifting through the lower courts in future litigation". 398 U.S. at 408, 90 S.Ct. at 1792, 26 L.Ed.2d at 361. The district court in the present case held that, after *Moragne,* damages for wrongful death must be determined according to general maritime law, and that damages may be awarded for the "emotional distress" suffered by the surviving family members of the decedents. *In re Sincere Navigation Corp.,* E.D.La. 1971, 329 F.Supp. 652. The Supreme Court later held, in *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 585 & n. 17, 94 S.Ct. 806, 815, 39 L.Ed.2d 9, 21, that, although damages are recoverable for the loss of the decedent's "love, affection, care, attention, companionship, comfort, and protection", the "mental anguish or grief" of *Moragne* beneficiaries is not compensable under the general maritime wrongful death remedy.

We must first determine whether state law or maritime law governs the damages issues in this case. Two questions are involved in reviewing the district judge's conclusion to apply general maritime law. First, should *Moragne* be applied retroactively to actions filed before the date of that decision? Second, assuming that *Moragne* is applied retroactively, does the federal right created by that decision *supplant* or does it *complement* the long-recognized right to recover in an admiralty court under a state wrongful death statute for a death occurring in state territorial waters.[5]

---

3. The following issues need not be considered or reconsidered by the district court on remand: whether the damages awarded to the claimant Virginia O'Quinn are adequate; which of the claimants are proper beneficiaries of the *Moragne* cause of action; whether prejudgment interest is recoverable under *Moragne*; whether the United States is entitled to exoneration from or limitation of liability; what was the precollision value of the White Alder; and whether damages are recoverable (and, if so, in what amount) for the detention of the Helena.

4. The diversity court must, of course apply state law. *Erie Railroad v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Under the general maritime law, there is no fed-

eral cause of action for wrongful death, The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, but the admiralty court may recognize the state wrongful death statute. *Western Fuel Co. v. Garcia,* 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210.

5. The claimants have not pressed their diversity contention after Judge Rubin held that the general maritime law governed their actions. On appeal, they have argued only that *Moragne* should not be applied retroactively to this action, that the federal admiralty court may permit this action to be maintained under the Louisiana wrongful death statute, *Western Fuel Co. v. Garcia,* and that the damages recoverable under such an action must be determined in accordance with Louisiana law. The

### A.

▮▮▮ The Supreme Court has held that, in determining whether a nonconstitutional decision should be applied retroactively, "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation". *Chevron Oil Co. v. Huson*, 1971, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306, *quoting Linkletter v. Walker*, 1965, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608. The primary purpose of *Moragne* is to "assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts". 398 U.S. at 401, 90 S.Ct. at 1788, 26 L.Ed.2d at 357. If we held that *Moragne* must be limited to prospective operation, the claimants in this case would have to rely on the state wrongful death statute. The maritime law of negligence and of unseaworthiness would then have to be enforced through the state remedial statute and the related state law. This is precisely what *Moragne* was designed to prevent. It would therefore further the purpose of *Moragne* to apply that decision retroactively to the present case.

The Supreme Court also noted in *Huson* that, in deciding whether a case should be applied retroactively, courts should consider the injustice or hardship such a holding would produce. 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306. The parents of the unmarried decedents, who have recovered only for their emotional distress, have argued that it would be inequitable to apply *Moragne* (and hence *Gaudet*) retroactively, eliminating their recovery after they have spent considerable time and money in these proceedings, with a view towards recovering damages to which they were legally entitled at the time of the deaths. It is not clear, however, that *Gaudet* will deprive these parties of their entire recovery for emotional distress. Moreover, in deciding whether civil rules should be applied retroactively, we think that the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before that rule was announced.[6] We therefore hold that, in the present case, *Moragne* should be applied retroactively to provide a cause of action under the general maritime law for these wrongful deaths.[7]

### B.

▮▮▮ Although we have held that the *Moragne* remedy was available to the claimants at the time of the district court's decisions in this case, it does not necessarily follow that this was the only remedy available. The admiralty courts have long recognized wrongful death ac-

---

*Tungus v. Skovgaard*, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524. We therefore need not decide whether, after *Moragne*, federal admiralty courts may recognize diversity actions brought under state wrongful death statutes.

**6.** One critic has argued that, in *Huson*, "the purpose of a civil rule was being given great weight, whereas, under the older formulations applied to civil cases, reliance and stability were usually considered the main factors." Note, Retroactivity in Civil Suits: Linkletter Modified, 42 Fordham L.Rev. 653, 660 (1974). *Huson* also identified a third factor, whether the new case establishes a new principal of law, for example, "by overruling clear past precedent". 404 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d at 306. *Moragne*, 398 U.S. at 409, 90 S.Ct. at 361, 26 L.Ed.2d at 1792, satisfied this indicium of nonretroactivity by expressly overruling *The Harrisburg*. This factor, how-

ever, is premised on the same notions of reliance and stability that have been discussed above. Although we do disparage the importance of these notions to a retroactivity decision, we do not consider them as crucial as the factor that focuses on the purpose of the new rule and on furthering its operation.

**7.** In so holding, we note that, although we have found no opinions that have discussed whether *Moragne* should be applied retroactively, three circuits (including ours) have applied that decision to actions that were filed prior to *Moragne*. *See, e. g., Canal Barge Co., Inc. v. Griffith*, 5 Cir. 1973, 480 F.2d 11; *Dennis v. Central Gulf Steamship Corp.*, 5 Cir. 1972, 453 F.2d 137; *Hornsby v. Fish Meal Co.*, 5 Cir. 1970, 431 F.2d 865; *Simpson v. Knutsen*, 9 Cir. 1971, 444 F.2d 523; *Petition of United States Steel Corp.*, 6 Cir. 1970, 436 F.2d 1256.

tions based on state statutes. *See, e. g., Western Fuel Co. v. Garcia,* 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210; *Grigsby v. Coastal Marine Service of Texas, Inc.,* 5 Cir. 1969, 412 F.2d 1011. The difficult question we now face is whether this state statutory action is still available in admiralty courts after *Moragne.*[8] It is first important to discern the rationale for enforcement in admiralty courts of state wrongful death statutes. We will then consider whether, after *Moragne,* that rationale continues to have force.

Admiralty courts have been recognizing wrongful death actions based upon state statutes for at least the past century. Before *The Harrisburg* held that a wrongful death action will not lie in the federal courts under the general maritime law, the admiralty courts were primarily concerned with whether they had the power to recognize the state-created causes of action. The reasoning of *The E. B. Ward, Jr.,* E.D.La.1883, 17 F. 456, 460, is typical of the cases in the pre-*Harrisburg* period:

> [I]f the state laws give such [wrongful death] action, why should not this court hold (following the conceded practice) "that the cause of action, therefore, existed by force of the territorial statute, and since it constituted a tort, and was upon navigable waters, and occurred in a case of collision, the court of admiralty could enforce it . . . ."

*See also In re Petition of the Long Island North Shore Passenger & Freight Transportation Co.,* S.D.N.Y.1881, 5 F. 599, 607–10; *Holmes v. O. & C. Railway Co.,* D.Or.1880, 5 F. 75.

In *The Harrisburg* the Court applied the "established" rule that no action can be maintained for a wrongful death in the absence of a statute giving the right. 119 U.S. at 213, 7 S.Ct. at 146, 30 L.Ed. at 362. The Court expressed no opinion about whether such an action could be maintained in a federal court under a state wrongful death statute because that action was not brought within the limitation period specified by the state statutes. The state statute was described as creating "a new legal liability, with the right to sue for its enforcement". *Id.* The Court therefore seemed to regard the recognition of state wrongful death statutes as the provision of a federal forum for the enforcement of a state-created cause of action.

This view of federal recognition of the state wrongful death statutes continued in the *Harrisburg*-to-*Moragne* era. In *The Hamilton,* 1907, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, the Court granted recovery under the Delaware wrongful death statute for a death occurring after a collision on the high seas. The Court held, first, that the constitutional and statutory grant of admiralty jurisdiction leaves open the jurisdiction of state legislatures over torts committed at sea. 207 U.S. at 404, 28 S.Ct. at 134, 52 L.Ed. at 269. The Delaware wrongful death statute was therefore held to be valid as applied to a high seas collision of two vessels owned by Delaware corporations. The Court went on to hold that the state statute created a personal liability of the owner of the Hamilton to the claimants and that "admiralty would not disregard [this liability], but would respect the right when brought before it

---

8. Although the question whether *Moragne* supplants the state statutory wrongful death actions in admiralty has rarely been discussed, *see Petition of United States Steel Corp.,* 6 Cir. 1970, 436 F.2d 1256, 1278–79; *Dennis v. Central Gulf Steamship Corp.,* E.D.La.1971, 323 F.Supp. 943, 946–48, *aff'd,* 5 Cir. 1972, 453 F.2d 137 (both concluding that *Moragne* supplants the state statutory action), numerous admiralty courts, including the district court in this case, have refused to apply state law in post-*Moragne* wrongful death actions. *See, e.* g., *Hornsby v. Fish Meal Co.,* 5 Cir. 1970, 431 F.2d 865; *In re Farrell Lines, Inc.,* S.D.Ga. 1974, 378 F.Supp. 1354; *Higgenbotham v. Mobil Oil Corp.,* W.D.La.1973, 357 F.Supp. 1164; *In re Cambria Steamship Co.,* N.D.Ohio 1973, 353 F.Supp. 691; *In re Farrell Lines, Inc.,* E.D. La.1971, 339 F.Supp. 91. The question we answer today, however, has not previously been decided by this Court and was expressly reserved in *Green v. Ross,* 5 Cir. 1973, 481 F.2d 102, 103.

in any legitimate way". 207 U.S. at 405, 28 S.Ct. at 135, 52 L.Ed. at 270. In *Western Fuel Co. v. Garcia,* 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, the Court permitted recovery under a California statute for a death occurring in that state's territorial waters. The Court held that "where death upon such waters follows from a maritime tort committed on navigable waters within a state whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel in personam for the damages sustained by those to whom such right is given". 257 U.S. at 242, 42 S.Ct. at 90, 66 L.Ed. at 214. As it had in *The Harrisburg* and *The Hamilton,* the Court in *Western Fuel* conceptualized the federal role as one of granting recovery for the commission of a tort that is defined by a state statute. 257 U.S. at 241–42, 42 S.Ct. at 90, 66 L.Ed. at 213.

In *Just v. Chambers,* 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903, the Supreme Court stated two reasons for the recognition and enforcement of state wrongful death statutes in admiralty courts. These reasons summarize the rationale for enforcing the state statutes. First, the Court adopted the reasoning of *The City of Norwalk,* S.D.N.Y.1893, 55 F. 98, 107:

> [T]he maritime law is not in itself a complete and perfect system. . . . The general body of the law as regards the ordinary, fundamental rights of persons and property, whether on land or sea, is . . . derived from the constituted order of the state, i. e. from the municipal law, which courts of admiralty to a considerable extent must necessarily adopt and follow . . . .

The *Norwalk* court then noted that the *Harrisburg* holding, that a wrongful death action could not be maintained in a court of admiralty in the absence of statutory authority, was premised on the lack of a wrongful death rule in the general maritime law.[9] It is therefore the municipal law, the *Norwalk* court argued, that governs wrongful death actions in admiralty.[10] 55 F. at 108. After tracing this reasoning of *Norwalk*, the Supreme Court observed in *Just v. Chambers* that "[t]hese views find abundant support in the history of the maritime law and in the decisions of this Court". 312 U.S. at 390, 61 S.Ct. at 692, 85 L.Ed. at 908. *See also Romero v. International Terminal Operating Co.,* 1959, 358 U.S. 354, 373–74, 79 S.Ct. 468, 480, 3 L.Ed.2d 368, 382.

The Supreme Court then stated that the second reason for federal recognition of the state statutory actions was a special solicitude for state sovereignty within its territorial borders:

> It is a broad recognition of the authority of the States to create rights and liabilities with respect to conduct within their borders, when the state action does not run counter to federal laws for the essential features of an exclusive federal jurisdiction.

312 U.S. at 391, 61 S.Ct. at 693, 85 L.Ed. at 908.[11]

The next important discussion of the rationale for recognition in admiralty of state wrongful death statutes was in *The Tungus v. Skovgaard,* 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524. The only possible basis for recovery for the alleged wrongful death in that case was

9. "It leaves the matter untouched." *The Harrisburg,* 119 U.S. at 213, 7 S.Ct. at 146, 30 L.Ed. at 362. *See* H. Baer, Admiralty Law of the Supreme Court § 6.10, at 159 (1969).

10. Similar reasoning was used to validate the Delaware wrongful death statute in *The Hamilton.* See discussion at p. 749 ante.

11. Although, at the time of *Just v. Chambers,* the courts seemed no longer to be concerned with the *power* of admiralty courts to enforce state statutes, the federal respect for state sovereignty discussed in the quoted passage probably underlied the pre-*Harrisburg* opinions upholding the power of admiralty courts to enforce the state statutes.

the state statute.[12] The Court stated that the case turned on the question whether the plaintiff had a right of action for wrongful death based on unseaworthiness; the answer depended on whether the state statute created a cause of action for such a death. "[W]hen admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached." 358 U.S. at 592, 79 S.Ct. at 506, 3 L.Ed.2d at 528. The Court concluded that the New Jersey statute encompassed actions for wrongful death based on unseaworthiness.[13]

*The Tungus* reaffirmed the second rationale given in *Just v. Chambers* for federal recognition of the state-created wrongful death action. The Death on the High Seas Act (DOHSA), 46 U.S.C. § 761 et seq., grants a remedy for wrongful deaths occurring *outside* of the states' territorial waters. Section 7 of the Act provides that "[t]he provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this [Act]". 46 U.S.C. § 767. In *The Tungus* the Supreme Court found that it was "the intent of Congress [in DOHSA] to preserve state sovereignty over deaths caused by maritime torts within the State's territorial waters". 358 U.S. at 593, 79 S.Ct. at 507, 3 L.Ed.2d at 529. The Court's holding, that when admiralty adopts a state's wrongful death cause of action, it must

also adopt the state's limitations and conditions on that action, was in part based on a desire not to disparage this congressional solicitude for state sovereignty.

And then came *Moragne v. States Marine Lines,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. The death that was the basis of *Moragne* occurred in navigable waters within the state of Florida. The decedent's widow sued the owner of the vessel on which her husband had been killed in state court on the theories of negligence and unseaworthiness. The shipowner removed the case to the federal district court on the ground of diversity of citizenship.[14] The district court then dismissed the portion of the complaint based on unseaworthiness on the ground that the Florida wrongful death statute did not encompass unseaworthiness as a basis of liability. We affirmed; but the Supreme Court reversed this Court, overruling *The Harrisburg,* and unanimously held that, notwithstanding the scope of the state wrongful death statute, an action lies under the general maritime law for death caused by the unseaworthiness of a vessel in state territorial waters.

*Moragne* is decisive on the presently considered issue because the Supreme Court in that case departed from the previously accepted concept of federal recognition of state wrongful death statutes as federal enforcement of state-defined primary duties.[15] Although the new view is apparent at many points

12. Because the death occurred in New Jersey territorial waters, there could be no recovery under the Death on the High Seas Act. That Act creates a right of action for only a "wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State . . . ." 46 U.S.C. § 761. And because the decedent was not a "seaman" within the meaning of the Jones Act, his family could not recover under that statute. *See* 46 U.S.C. § 688.

13. This Court has reached the same conclusion about Article 2315 of the Louisiana Civil Code, the wrongful death statute under which the actions before us were brought. *See Grigsby v. Coastal Marine Service of Texas, Inc.,* 5 Cir. 1969, 412 F.2d 1011, 1023–29.

14. As in *Moragne,* some of the present actions were brought under the diversity jurisdiction, but are being decided under the general maritime law. *See* note 5 *supra.*

15. This departure from the previous rationale has also been noted in *Dennis v. Central Gulf Steamship Corp.,* E.D.La.1971, 323 F.Supp. 943, 947. The departure was foreshadowed by Justice Brennan's dissent, joined by three other justices, in *The Tungus.* He argued that the duty to provide a seaworthy vessel is imposed by the federal maritime law and that admiralty courts look to the state statutes only to provide remedies to enforce the duties imposed by federal law.

throughout the *Moragne* opinion, it is, perhaps, expressed most clearly in footnote 15:

> The incongruity of forcing the States to provide the sole remedy to effectuate duties that have no basis in state policy is highlighted in this case. . . .
> Federal law, rather than State, is the more appropriate source of a remedy for violation of the federally imposed duties of maritime law.

398 U.S. at 401 n. 15, 90 S.Ct. at 1788, 26 L.Ed.2d at 357. And, after noting that *The Harrisburg* had denied any general maritime law remedy for wrongful deaths, the Court described the federal recognition of the state statutes in the post-*Harrisburg* era: "For deaths within state territorial waters, the federal law accommodated the humane policies of state wrongful-death statutes by allowing recovery whenever an applicable state statute favored such recovery." 398 U.S. at 393, 90 S.Ct. at 1784, 26 L.Ed.2d at 352. Because the *Moragne* Court adopted Justice Brennan's dissenting duty/remedy distinction in *The Tungus*,[16] this description of federal recognition should be harmonized with his further *Tungus* comment that the harshness of *The Harrisburg* had been "averted by the practice in admiralty of drawing on the state wrongful death statutes to furnish remedies for fatal maritime torts". 358 U.S. at 599, 79 S.Ct. at 510, 3 L.Ed.2d at 532.[17]

The Supreme Court in *Moragne,* therefore, not only undercut the preexisting rationale for federal recognition of state wrongful death statutes, but also supplied a new explanation for the many years of federal enforcement of these statutes. The first rationale discussed in *Just v. Chambers* was that recognition of the state-created causes of action was necessary to fill the general maritime law void regarding wrongful death actions. *Moragne* filled this void and terminated this need for recognition of the state statutes.

The second rationale noted in *Just v. Chambers* is the special solicitude that had been given by the federal courts to the states' sovereignty in their territorial waters. The *Moragne* Court, however, was not as solicitous.[18] Although Florida law provided no right of action for deaths caused by unseaworthiness, the Court permitted such an action to be brought under the general maritime law for a death occurring in Florida's territorial waters. This directly contradicts the reasoning of *The Tungus,* in which the Court held that, if the state statute denies a remedy for deaths caused by a vessel's unseaworthiness, that "condition or limitation" on the state wrongful death remedy would have to be adhered to by the federal courts. 358 U.S. at 591–94, 79 S.Ct. at 505, 3 L.Ed.2d at 527. By creating the expansive cause of action for sea-oriented deaths, whether caused by negligence or unseaworthiness, the *Moragne* Court significantly interfered with the state schemes for wrongful death recoveries.

The new rationale implicit in *Moragne* for the many years of federal recognition of the state statutes was that this recognition provided a remedy for

---

16. *See* note 15 *supra.*

17. It has been suggested that this view dates all the way back to the language of *The Harrisburg,* which encouraged admiralty courts to adopt state wrongful death statutes to circumvent the harshness of that decision. Fallon, Rights, Remedies and Recovery for Wrongful Death Under Maritime Law, 1 Mari.Law. 32, 33 (1975).

18. In *The Tungus,* for example, the Court emphasized that DOHSA was intended to preserve state sovereignty over wrongful deaths in state territorial waters. In *Moragne,* the Court shifted its emphasis to the congressional intent to fill the void that had existed in the maritime law for remedies for wrongful deaths that occurred outside of state territorial waters. (Prior to the enactment of DOHSA, the only remedies for wrongful deaths at sea were the state statutes, most of which covered only deaths within state territorial waters.) And, although the *Moragne* Court noted the congressional intent to preserve the state remedies, the Court went on to eliminate one of the limitations on these remedies that existed in most states, the exclusion of unseaworthiness as a cause of action.

breaches of federally imposed duties of the sea that resulted in death. The Court relied on the underlying intention over those years to alleviate the harshness of the *Harrisburg* rule. This is the rationale for federal recognition that remains after *Moragne*. Paradoxically, this rationale is no longer persuasive in the post-*Moragne* era. Now that *The Harrisburg* has been overturned and a general maritime law remedy for wrongful death has been created, there is no longer a need for recognition and enforcement of state wrongful death statutes in the admiralty courts.[19]

Because a persuasive rationale for the enforcement of state wrongful death statutes in admiralty courts no longer exists after *Moragne,* we hold that the wrongful death remedy provided by that case precludes recognition in admiralty of state statutes. The general maritime law will therefore govern the case before us. With that question settled, we now specify the issues that compel us to remand the case to the district court.

### C.

The district court awarded damages to the wives and parents of the decedents for "emotional distress". 329 F.Supp. 652. The trial judge's opinion was written before the decision in *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, holding that, although "loss of society" is compensable under the general maritime law wrongful-death remedy, "mental anguish or grief" is not. 414 U.S. 585 n. 17, 94 S.Ct. 815, 39 L.Ed.2d 21. We therefore remand to the trial judge—who can, if any judge can—determine that portion of the award for emotional distress representing "loss of society" and that portion representing "mental anguish or grief", within the meaning of those words in *Gaudet.*

### II.

In determining the wives' damages for loss of support, the trial judge stated, "I have to some degree offset discount to present value by the effects of inflation and a likely rise in a decedent's earnings resulting from increases in the general wage level. I have assumed a discount rate of 5%, and a three per cent inflationary level thus making the net discount rate 2%". 329 F.Supp. at 660. The later calculations of the damages for loss of support for the various claimants were unclear, but seemed to be based on the inflation and present value factors, the expert testimony of an economist as to expected future earnings, and the present cost of annuities that would pay monthly amounts increasing at the estimated rate of inflation. In *Johnson v. Penrod Drilling Co.,* 5 Cir. 1975, 510 F.2d 234, 241 (en banc), we held that "the influence on future damages of possible inflation or deflation is too speculative a matter for judicial determination". We remand to district court for a more detailed calculation of the damages for loss of support in light of *Penrod.*

### III.

The district court found that both the Helena and the White Alder were at fault for the collision upon which this suit is based. He then applied the divided damages rule and held "that Sincere Navigation Corporation [should] recover against the United States of America [the owner of the White Alder] one-half of the excess of the amount of damages sustained by it . . . over the amount of the dam-

---

19. *See Petition of the United States Steel Corp.,* 6 Cir. 1970, 436 F.2d 1256, 1279; *Dennis v. Central Gulf Steamship Corp.,* E.D.La. 1971, 323 F.Supp. 943, 948, *aff'd,* 5 Cir. 1972, 453 F.2d 137; George & Moore, Wrongful Death and Survival Actions Under the General Maritime Law: Pre-Harrisburg Through Post-Moragne, 4 J.Mari.L. & Comm. 1, 15 (1972); 24 Emory L.J. 195, 213–15 (1975); 70 Mich.L. Rev. 757, 762–63 (1972). *See also* Comment, The General Maritime Action for Wrongful Death: Pleading and Practice in the Wake of *Moragne,* 10 Houston L.Rev. 101, 102–105 (1972).

ages sustained by the United States . . . ." The Supreme Court subsequently held in *United States v. Reliable Transfer Company, Inc.,* 1975, 421 U.S. 397, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251, 262,

> that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

We must therefore decide whether *Reliable Transfer* should be applied retroactively to the present case. The Supreme Court has isolated three factors as relevant to the determination whether a nonconstitutional decision should be limited to prospective effect.

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question. Its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306.

Because *Reliable Transfer* overruled *The Schooner Catharine v. Dickinson,* 58 U.S. (17 How.) 170, 15 L.Ed. 233, the first *Huson* criterion for nonretroactivity has been satisfied. As was the case with *Moragne,* however, satisfaction of this criterion is not enough to compel a decision of nonretroactivity.[20]

The Court's purpose in rejecting the divided damages rule and adopting a rule of comparative negligence for allocating liability for property damage was the achievement of a " 'just and equitable' allocation of damages". 421 U.S. at 411, 95 S.Ct. at 1715, 44 L.Ed.2d at 262. Retrospective operation of the *Reliable Transfer* rule would promote that goal. And a holding of retroactivity would not "produce substantial inequitable results" in this case. It seems unlikely, for example, that the parties' conduct leading to the Helena-White Alder collision was in any way influenced by the pre-*Reliable Transfer* divided damages rule.

We therefore hold that the *Reliable Transfer* rule should be applied to the case before us.[21] We must remand the case to the district court for a determination of the proportions of fault for the collision attributable to the Helena and the White Alder.

## IV.

The district court awarded $10,000 damages to two surviving seamen, Richard Kraus and Bruce Kapowski, for the mental and physical pain and suffering they were subjected to as a result of the collision. These awards have not been challenged on appeal. They are affirmed.

With regret, we remand this case to the district court. The claimants in this case have waited a long time for their

---

20. *See* note 6 *supra.*

21. The Ninth Circuit recently reached the same result in a very similar context. *See*

*Crown Zellerbach Corp. v. Willamette-Western Corp.,* 1975, 519 F.2d 1327.

damages awards based on an accident that occurred in 1968. We retain jurisdiction and, hopefully, will finally resolve this appeal shortly after issuance of the district court's remand opinion.

Affirmed in part, vacated in part, and remanded.